CAROBERTO COLÓN ROSICH, Plaintiff and Appellee, *v.* RAFAEL SAURÍ, Defendant and Appellant.

No. 495. Argued April 25, 1930.—Decided July 28, 1931.

*Tous Soto & Zapater* for appellant.  *F. Colón Díaz* for appellee.

MR. JUSTICE WOLF delivered the opinion of the Court.

The plaintiff and appellee made a verbal contract with Oscar Oppenheimer which was to expire in 1928. The con-

tract was made in 1923 for the cutting and hauling (*corte y tiro*) of cane. Let us assume with the appellant that the word "*tiro*" of cane means the transportation of cane. The cutting was to take place on the property Hacienda Santa Cruz. In October, 1924, Oppenheimer sold this property to Rafael Saurí, defendant and appellant. The plaintiff alleged that Rafael Saurí agreed verbally to go on with the contract made between the plaintiff and Oscar Oppenheimer. The plaintiff sued for the breach of the contract and for damages.

At the close of plaintiff's case the defendant made a motion for nonsuit which the court overruled and supported its ruling in rendering judgment for the plaintiff. Two errors are assigned. The first is that the contract was a mercantile one and should have been proved by a writing. The second is that the court erred in considering solely oral evidence as proving a contract customarily made in writing. The provisions of the Code of Commerce applicable are:

"Art. 349.—A contract for all kinds of transportation overland or by river shall be considered commercial—

"1. When it involves merchandise or any commercial goods.

"2. When, no matter what his object may be, the carrier is a merchant or is customarily engaged in transporting goods for the public."

"Art. 51.—Commercial contracts shall be valid and serve as the basis of an obligation and cause of action in suits, whatever may be the form or in whatever foreign language they may be executed, the class to which they correspond, and the amount involved, provided their existence is proven by some of the means established by the civil law. However, the testimony of witnesses shall not in itself be sufficient to prove the existence of a contract wherein the amount involved exceeds 1,500 pesetas if no other evidence is adduced in support thereof.

"Telegraphic correspondence shall only be the basis of an obligation between contracting parties who have previously admitted this medium in a written contract, and provided the telegrams fulfill the conventional conditions or tokens which may have been previously fixed and agreed to by the contracting parties."

The evidence tended to show that the plaintiff by profession made contracts of *"corte y tiro"* with persons other than Oppenheimer and that was the general occupation and custom of the plaintiff. The court below held in effect that to fall within the provisions of section 349, the contract of carrying should be independent of other contracts and should be public, and we agree. The court cited various authorities tending to support its views. Perhaps, as argued by appellant, there is some conflict in the authorities as to whether a contract involving transportation should not always be considered mercantile. We have the idea, and so hold, that the business of the plaintiff involved in this case was not public in the sense of section 349. He did not hold himself out to all comers and made contracts to suit himself. The public referred to in section 349 has a different connotation. and means public carriers generally recognized as such. A person who did nothing but transport cane at the instance of practically anybody might be considered a public carrier.

A more important consideration is that the plaintiff devoted himself to the cutting and transportation of cane, essentially an agricultural occupation and not independently one of transportation. We are inclined to hold that when a contract is just as much civil as it is mercantile, the civil character prevails. In other words, to invoke section 51, the mercantile character should be unquestionable.

The cutting of cane may readily involve some dexterity. The plaintiff here undertook to convert the standing cane into transportable goods and then carry. Would any public carrier undertake to do likewise by profession? Whether our reasoning is technically perfect or not we think that the ordinary man would be convinced that the contract before us is not mercantile.

The court found a clear preponderance of evidence in favor of the plaintiff, and error is assigned. Despite all the argument, in the final analysis there was nothing but a conflict of the evidence and the court believed the witnesses of

the plaintiff. In October, 1924, when the transfer was made, the plaintiff, the defendant, Oppenheimer and other persons met at the house of the plaintiff to draw up the deed of transfer between Oppenheimer and Saurí. A notary was of course present. Testimony was given by the plaintiff, Oppenheimer and others, that Oppenheimer proposed that the agreement between him and the plaintiff should be incorporated into a writing. Whereupon, according to the testimony, Saurí protested that a writing was unnecessary, but that he would carry out the agreement, or words to that effect. On the other hand, the notary testified that he was present during all the proceedings and that no such conversation or agreement took place. Naturally the court was impressed by this denial and took a view of the premises. The witnesses had testified that the agreement in question took place in the dining room while the notary was seated in the living room. The judge placed himself where the notary had been and found in effect that, while one might be conscious of the conversation in the dining room, its import could not be caught. The court was disposed not to question the credibility of the notary but simply believed that he was mistaken. For ourselves we do not see how any notary, whether continuously occupied in the preparation of a deed or not, could be sure that he heard the whole conversation. It makes little difference whether the court found from the testimony that there was much noise (*alboroto*) in the room or not. The court commented on the difference in frankness between the witnesses of the plaintiff and some of the witnesses of the defendant, other than the notary. We find no reason to differ from the able and industrious analysis made by the court below.

Reverting now to section 51 of the Code of Commerce, we have the notion there was evidence other than oral in this case. The existence of the previous contract between Oppenheimer and the plaintiff was one; the fact that the notary and the parties were trying in the deed to cover or

anticipate all liens or charges was another; and still another was that the sale took place in the house of the plaintiff who otherwise had no interest than that of being a friend of the parties. All this was circumstantial evidence other than the mere verbal testimony of the witnesses.

We find no satisfactory evidence that contracts of this kind are customarily made in writing. Even if there were, we know of nothing in the law that would impose the custom on the parties.

The plaintiff sought damages because he did not have an opportunity to cut and transport cane from the property for the years 1925 and 1926 and claimed $3,210.90. The court limited him to the sum of $1,500, and appellant does not convince us that there was error. Similarly with the matter of costs.

The judgment will be affirmed.